# 23-7203

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

Jerson Alejandro Villalba-Ramirez,

Maria Belen Alvarez-Merizalde,

Zoeh Alejandra Villalba-Alvarez,

Petitioners,

v.

Merrick B. Garland, United States Attorney General,

Respondent.

**PETITIONERS' OPENING BRIEF AND SPECIAL APPENDIX**

*Joshua Bardavid, Esq*
*277 Broadway, Suite 1501*
*New York, New York 10013*
*(212) 219-3244*
*Josh@bardavidlaw.com*

## TABLE OF CONTENTS

Table of Contents ..................... i

Table of Authorities ..................... iii

Preliminary Statement ..................... 1

Statement of Jurisdiction, Venue and Timeliness..................... 2

Statement of the Issues ..................... 2

Statement of the Case and Facts ..................... 3

A. Procedural History..................... 3

B. Factual Claim for Asylum ..................... 4

C. Immigration Judge's Decision ..................... 7

D. The Board's decision under review ..................... 11

Summary of the Argument..................... 12

Argument..................... 15

PETITIONERS HAVE A WELL-FOUNDED FEAR OF FUTURE PERSECUTION AND IT IS MORE LIKELY THAN NOT THAT THEY WILL BE PERSECUTED ON ACCOUNT OF MULTIPLE COGNIZABLE PARTICULAR SOCIAL GROUPS

A. Legal Standards for Asylum and Related Relief........................... 15

1. Asylum and withholding of removal ................................. 15

2. Standard of review ........................................................ 16

B. Mr. Villalba-Ramirez' social groups are socially distinct within Ecuadorian society ........................................................................ 16

Conclusion ........................................................................................ 28

Statement of Related Cases and Proceedings ....................................... 29

Certificate of Compliance .................................................................. 29

Certificate of Service......................................................................... 30

Certificate of Virus Check.................................................................. 30

Certificate of Identical Compliance of Brief ........................................ 31

## TABLE OF AUTHORITIES

### Cases

*Anderson v. McElroy*,
953 F.2d 803 (2d Cir. 1992)....................18

*Beaumont, S. L. & W. Ry. Co. v. United States,*
282 U.S. 74 (1930)....................18

*Gashi v. Holder,*
702 F.3d 130 (2d Cir. 2012)....................14, 25

*Hong Fei Gao v. Sessions*,
891 F. 3d 67 (2d Cir. 2018)....................16

*Kone v. Holder*,
596 F.3d 141 (2d Cir. 2010)....................16

*Koudriachova v. Gonzales,*
490 F.3d 255 (2d Cir. 2007)....................11

*Li Zu Guan v. INS*,
453 F.3d 129 (2d Cir. 2006)....................18

*Ordonez Azmen v. Barr*,
965 F.3d 128 (2d Cir 2020)....................passim

*United States v. Chicago, M., S. P. & P. R. Co.,*
294 U.S. 499, 511 (1935)....................19

*Vargas v. INS*,
938 F.2d 358 (2d Cir. 1991)....................18

## Statutes

8 U.S.C. § 1101(a)(42)(A) ........ 15

8 U.S.C. § 1227(a)(1)(B) ........ 3

8 U.S.C. § 1231(b)(3) ........ 16

8 U.S.C. § 1252(b)(2) ........ 2

8 U.S.C. § 1252(b)(2). ........ 2

## Regulations

8 C.F.R. § 1003.1 ........ 2

8 C.F.R. § 1208.16(b)(1) ........ 16

8 U.S.C. § 1252 ........ 2

8 U.S.C. § 1252(b)(1) ........ 2

## Decisions of the Board of Immigration Appeals

*Matter of A-B-*,
27 I&N Dec. 316 (A.G. 2018) ........ 26

*Matter of A-B-*,
28 I&N Dec. 307 (A.G. 2021) ........ 26

*Matter of Acosta*,
19 I&N Dec. 211 (BIA 1985) ........ 11

*Matter of H-*,
21 I&N Dec. 337 (BIA 1996) ....................................................26

*Matter of J-F-F-*,
23 I&N Dec. 912 (A.G. 2006) ..................................................10

*Matter of Mogharrabi*,
19 I&N Dec. 439 (BIA 1987) ....................................................15

23-7203

---

In the United States Court of Appeals
for the Second Circuit

---

Jerson Alejandro Villalba-Ramirez, *et. al*, Petitioners,
v.
Merrick B. Garland, United States Attorney General,

---

PETITIONERS' OPENING BRIEF

---

## PRELIMINARY STATEMENT

This is a petition for review of an August 28, 2023 decision of the Board of Immigration Appeals ("BIA" or "Board") made in the *Jerson A. Villalba-Ramirez, et. al.* A220-996-560/561/562 by a single panel member, "Wilson, Appellate Immigration Judge." *See* Certified Administrative Record ("AR") 1-5. The Board dismissed Petitioners' appeal of the decision of an Immigration Judge denying her applications for asylum, withholding of removal, and for protection under Article III of the United Nations Convention Against Torture.

## STATEMENT OF JURISDICTION, VENUE AND TIMELINESS

Petitioners seek this Court's review of the Board of Immigration Appeals' decision and the final order of removal entered against them. The Board had jurisdiction over the appeal pursuant to 8 C.F.R. § 1003.1. This Court's jurisdiction arises under 8 U.S.C. § 1252.

Petitioners timely filed this petition for review of the Board's August 28, 2023 decision with this Court on September 27, 2023. The petition for review was timely in that it was filed within 30 days of the final order of removal. See 8 U.S.C. § 1252(b)(1) ("[t]he petition for review must be filed not later than 30 days after the date of the final order of removal.").

Venue is proper in this Court because the Immigration Judge completed the proceedings in New York, New York which is within this Circuit. See 8 U.S.C. § 1252(b)(2).

## STATEMENT OF THE ISSUES

Whether the Immigration Court erred as a matter of law in determining that Petitioners' social groups were not distinct in Ecuadorian society.

## STATEMENT OF THE CASE AND FACTS

### A. Procedural History

Petitioner, Jerson Alejandro Villalba-Ramirez ("Mr. Villalba-Ramirez") is a native and citizen of Ecuador, born on December 9, 1996 in Pacora Province. AR. 151. Petitioner, Maria Belen Alvarez-Merizalde ("Mrs. Alvarez-Merizalde") is also a native and citizen of Ecuador, born on December 16, 1998. AR. 155. Mr. Villalba-Ramirez and Mrs. Alvarez-Merizalde are married, having wed in Ecuador on December 29, 2017. AR. 159. They are the biological parents of Petitioner, Zoeh Alejandra Villalba-Alvarez ("Zoeh"), who was born on February 9, 2018 in Pastaza Province, Ecuador. AR. 167.

Petitioners arrived in the United States on or about June 15, 2021 at or near Rio Grande Valley, Texas without inspection. AR. 17; 419; 439. They were stopped by agents of the Department of Homeland Security upon arrival, and on July 20, 2021 issued a Notice to Appear charging them with being subject to removal from the United States pursuant to the Immigration and Nationality Act § 212(a)(6)(A)(i), codified at 8 U.S.C. § 1182(a)(6)(A). AR. 17; 419; 439.

**B. Factual Claim for Asylum**

On May 4, 2022, Petitioners timely filed an application for asylum, withholding of removal, and protection under the Convention Against Torture. AR 391-403. The basis of the application was that Mr. Villalba-Ramirez and his family faced years of threats of harm on account of his membership in multiple particular social groups by individuals whom the Ecuadorian government was unwilling and unable to stop. AR. 144-49; 395-98.

On May 4, 2022, Petitioners appeared before Immigration Judge Lisa W. Ling in New York, New York where they provided testimony in support of their application. AR. 127-38. The details of their claim for asylum, as provided in Mr. Villalba-Ramirez's testimony (which was stipulated to be consistent with his statement and evidence), written statement, supporting evidence and background material, all found credible and accepted as true by the agency below, can be briefly summarized as follows:

Mr. Villalba-Ramirez entered the dragon fruit (or "pitahaya") business in July 2020. AR. 144. Mr. Villalba-Ramirez and his business

partner would purchase locally and regionally grown dragon fruit and export it to distributors in Peru and Colombia. AR. 144. Mr. Villalba-Ramirez' business grew and soon he was exporting $20,000 USD worth of dragon fruit a week, mostly to a business contact in Peru named Jorge Espinoza ("Jorge"). *Id.*

On the December 29, 2020 and January 3, 2020, Mr. Villalba-Ramirez shipped Jorge dragon fruit totaling $40,000 in value. However, Jorge only paid Mr. Villalba-Ramirez $5,000 total for both shipments, leaving Mr. Villalba-Ramirez indebted to the farmers by $35,000. Mr. Villalba-Ramirez was forced to close the business soon after because he could not pay the farmers the amount they were asking for. AR. 144.

Soon thereafter, the 20 or so farmers with whom Mr. Villalba-Ramirez had conducted business began demanding their money and threatening violence against him and his family if he did not pay them immediately. Beginning January 15, 2021, the farmers would call me day-and-night asking for their money. *Id.*

On the evening of January 25, 2021, a group of around four men went to Mr. Villalba-Ramirez house to look for him. AR. 145. Mr. Villalba-

Ramirez was not at home at the time. However, Mrs. Alvarez-Merizalde was at home and witnessed the four men attempting to bash through the front gate of their home. AR. 145; 171. A guard dog on their property held the men at bay as they shouted threats at Mrs. Alvarez-Merizalde and warned that Mr. Villalba-Ramirez had to pay his debt immediately or face harm to the whole family. *Id*.

Mr. Villalba-Ramirez continued to receive constant threats by phone. He stopped answering his business phone because of the number of calls and threats. His voicemail inbox and text message thread became inundate with warnings of harm and death. AR. 145. Mr. Villalba-Ramirez attempted to make partial monthly payments to the farmers to alleviate the pressure, but it had no effect. AR. 145.

Mr. Villalba-Ramirez did not seek the protection of the police because he did not believe they would protect him. AR. 145. To the contrary, he believed that the risk of harm would only worsen should he attempt to go to the police. AR. 145. Finally, after additional incidents where farmers stalked and personally threatened Mr. Villalba-Ramirez and his family at

their home and while running errands, he and his wife concluded that they could not remain in the country safely. AR. 145-46.

On June 13, 2021, the Petitioners fled Ecuador to the United States, arriving two weeks later. Since their arrival, Mr. Villalba-Ramirez has continued to receive threats from individuals in Ecuador, including threats made via social media and to other relatives who remain in Ecuador. Mr. Villalba-Ramirez does not believe that they could return to Ecuador and live safely. AR. 146.

**C. Immigration Judge's Decision**

On May 4, 2024, Immigration Judge Ling denied Petitioners' applications for relief and ordered them removed to Ecuador. AR 93-109. Although Judge Ling accepted the claim as true, she found that the facts underpinning Mr. Villalba-Ramirez' flight from and fear of return to Ecuador had not met the statutory requirements for the relief sought. AR. 91-101.[1]

[1] The Department of Homeland Security argued that Mr. Villalba-Ramirez's failure to pay the farmers constituted a serious non-political crime barring Petitioners' application for asylum. AR. 94-96. However, this argument was rejected by the IJ and not raised on appeal; as such, this issue will not be addressed herein.

Although IJ Ling was "sympathetic" to Mr. Villalba-Ramirez and his family's experiences, the Judge concluded that the threats were insufficiently "imminent, concrete, or so menacing as to cause significant actual suffering or harm." AR. 96 (*citing Ci Pan v. Atty Gen*, 449 F.3d 408, 412 (2d Cir. 2006). In addition, because Petitioners experienced no physical harm, the Judge that they had not experienced past persecution. AR. 96.

Additionally, the Immigration Judge concluded that Mr. Villalba-Ramirez did not establish "the requisite nexus to a protected ground." AR. 96-97. The Judge rejected Mr. Villalba-Ramirez's arguments that the harm experienced and feared was and would be on account of either his political opinion or one of two particular social groups: (1) Ecuadorian current or former small business owners, and (2) Ecuadorian small business owners indebted or previously indebted to farmers. AR. 97. IJ Ling stated that neither proposed social group was cognizable. AR. 97.

With respect to cognizability, Judge Ling first asserted that "being a small business owner is [not] immutable," as Mr. Villalba-Ramirez

"could find another form of employment and no longer be a current small business owner." AR. 97. Second, although the IJ acknowledged that being a former small business owner is something that cannot be changed, she found that such a group is not viewed as socially distinct in Ecuadorian society. AR. 97. The Judge stated that "background materials in this case failed to demonstrate the social distinction aspect," and thus concluded that the groups lacked cognizability. AR. 97.

Alternatively, even if IJ Ling were to conclude that the groups were cognizable, she would find that Mr. Villalba-Ramirez failed to establish that his membership in these groups were at least one central reason for the harm. AR. 97-98. The Judge characterized the matter as a "personal dispute" related to a debt, and the threats had no nexus to a protected social group. AR. 98.

Moreover, the Court asserted that Mr. Villalba-Ramirez failed to demonstrate that the authorities in Ecuador was or would be unwilling and/or unable to afford him and his family protection. AR. 98. The Judge noted that no prior problems between the Petitioners and the Ecuadorian authorities were alleged, and that Mr. Villalba-Ramirez

"chose not to report the threat or any harm that he suffered from the farmers to the police in Ecuador." AR. 98-99. Judge Ling also cited to the background materials which showed that "the armed forces were being mobilized and their presence will be felt with force in the streets." AR. 99. For these reasons, the IJ denied Petitioners' applications for asylum and withholding of removal. AR. 99.

Finally, the Court concluded that Petitioners failed to demonstrate that they face torture in Ecuador. AR. 99. Judge Ling stated that "CAT relief cannot be established by stringing together a series of suppositions to show that torture is more likely than not to occur unless the evidence shows that each step in the hypothetical chain of events is more likely than not to happen." AR. 99 (*citing Matter of J-F-F-*, 23 I&N Dec. 912, 917-18 (A.G. 2006). The IJ found any feared torture too speculative in this instance to warrant relief. AR. 99. Moreover, the Court asserted that Petitioners did not demonstrate that the authorities would acquiesce to any future torture. AR. 99. For all of these reasons, the Judge denied all applications for relief and ordered Petitioners removed to Ecuador. AR. 99-100.

**D. The Board's decision under review**

On August 29, 2023, the BIA dismissed the appeal and affirmed the IJ's denial of Petitioners' applications for asylum and related relief. AR 1-5. After summarizing the procedural history, the Board affirmed one aspect of the IJ's decision with respect to asylum and withholding of removal, which it deemed sufficient to dispose of the matter, declining to reach any other issue. AR. 4-5.

Specifically, the Board agreed that the proposed social groups were not cognizable. The Board accepted that the groups might be immutable and assumed "without deciding" that the proposed groups were sufficiently particular. AR. 4. However, the Board concluded that the proposed groups are not viewed as distinct within Ecuadorian society. AR. 4 (*citing Koudriachova v. Gonzales,* 490 F.3d 255, 261 (2d Cir. 2007) and *Matter of Acosta*, 19 I&N Dec. 211, 233-34 (BIA 1985). Noting that the burden of proof was on the Petitioners, the Board favorably cited to the IJ's holding that the background materials did not demonstrate social distinction. AR. 4 (citing *Ordonez Azmen v. Barr*, 965 F.3d 128, 134 (2d. Cir. 2020)).

Because the Board found that the proposed social group was not cognizable, it asserted that was legally sufficient to dispose of the appeal while declining to reach Petitioners' appellate challenges to Judge's findings relating to past persecution, nexus, the Ecuadorian government's willingness or ability to control private actors, and whether there was a pattern or practice of persecuting similarly situated individuals. AR. 4.

Finally, the Board affirmed the Immigration Judge's denial of CAT protection.[2] AR. 5. For all of these reasons, the Board affirmed the decision of the Immigration Court. AR. 5. It is from that decision that Petitioners timely sought review before this Court.

## SUMMARY OF THE ARGUMENT

The Board of Immigration Appeals erred as a matter of fact and law in affirming the decision of the Immigration Judge. Contrary to the finding of the agency below, the record establishes that Ecuadorian society views as socially distinct (1) Ecuadorian current or former small business

---

[2] Petitioners do not challenge the denial of their application for protection under the Convention Against Torture.

owners, and (2) Ecuadorian small business owners indebted or previously indebted to farmers.

At the outset, the issues are that not before this Court must be noted. Because the Board expressly declined to address any other basis provided by the Immigration Judge for her denial of asylum and withholding of removal, such bases are not before this Court. The *sole* reason provided by the Board for affirming the denial of asylum and withholding of removal is that, according to the Board, the record did not demonstrate the requisite social distinction in Ecuadorian society.

Here, the record overwhelmingly demonstrates that Ecuadorian society views Petitioners' social groups as socially distinct. The Immigration Judge's truncated and unelaborated finding that "[t]he background materials in this case failed to demonstrate the social distinction aspect in finding that these particular social groups are cognizable," AR. 114, cannot be affirmed.

Contrary to the assertion of the IJ, the background materials establish conclusively that the Petitioners social groups are viewed as socially distinct. The various reports repeatedly refer to businesses, business

people, self-employed individuals, and various other discrete groups which fall within the proposed social groups of Petitioners. These groups are separated out from society at large for analysis by the background materials precisely because Ecuadorian society at large separates the groups. Accordingly, the immutable characteristics which bind Petitioners' respective groups "have enough 'social visibility'…to distinguish them in the eyes of a persecutor—or in the eyes of the outside world in general.'" *Gashi v. Holder,* 702 F.3d 130, 136 (2d Cir. 2012) ("[t]hese facts sufficiently demonstrate that the group of cooperating witnesses on which basis Gashi claimed eligibility was socially visible to potential persecutors and the wider Kosovar society") (citing *Ucelo-Gomez v. Mukasey,* 509 F.3d 70, 73 (2d Cir. 2007)).

The controlling law of this Court therefore leaves no other remedy but to remand for either granting asylum and withholding of removal or for the social group analysis to be conducted in light of the record as a whole in the first instance.

# ARGUMENT

## PETITIONERS HAVE A WELL-FOUNDED FEAR OF FUTURE PERSECUTION AND IT IS MORE LIKELY THAN NOT THAT THEY WILL BE PERSECUTED ON ACCOUNT OF MULTIPLE COGNIZABLE PARTICULAR SOCIAL GROUPS

### A. Legal Standards for Asylum and Related Relief

*1. Asylum and withholding of removal*

To be eligible for asylum, an applicant must be a "refugee," defined as a person who is unwilling or unable to return to his home country because he has experienced past persecution or has a well-founded fear of future persecution on account of his or her race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A). To establish a "well-founded fear," it must be shown that a reasonable person in the same circumstances would fear persecution if removed. *Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987).

Withholding of removal is mandatory if the "Attorney General determines that [the] aliens life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a

particular social group, or political opinion." 8 U.S.C. § 1231(b)(3). The alien must establish a "clear probability" or that it is more likely than not that the alien would suffer persecution if repatriated. 8 C.F.R. § 1208.16(b)(1).

### 2. *Standard of review*

This Court will "review *de novo* questions of law and the application of law to fact." *Hong Fei Gao v. Sessions*, 891 F. 3d 67, 76 (2d Cir. 2018) (citing *Kone v. Holder*, 596 F.3d 141, 146 (2d Cir. 2010)). The Court will "review the agency's factual findings, including adverse credibility findings, under the substantial evidence standard, 'which requires that they be supported by reasonable, substantial and probative evidence in the record when considered as a whole.'" *Id* (quoting *Kone,* 596 F.3d at 147) (internal quotation and marks omitted).

## B. Mr. Villalba-Ramirez' social groups are socially distinct within Ecuadorian society

The Board of Immigration Appeals erred as a matter of fact and law in affirming the decision of the Immigration Judge. Contrary to the finding of the agency below, the record establishes that Ecuadorian society views as socially distinct (1) Ecuadorian current or former small business

owners, and (2) Ecuadorian small business owners indebted or previously indebted to farmers. Therefore, the decision below compels reversal by this Court and a remand back to the agency for granting asylum and withholding of removal. In the alternative, the matter should be remanded for further analysis.

At the outset, the issues are that not before this Court must be noted. Because the Board expressly declined to address any other basis provided by the Immigration Judge for her denial of asylum and withholding of removal, such bases are not before this Court. The *sole* reason provided by the Board for affirming the denial of asylum and withholding of removal is that, according to the Board, the record did not demonstrate the requisite social distinction in Ecuadorian society. Specifically, the Board explained:

> Even if membership in these groups is immutable, due to a past shared experience, and assuming without deciding that they are sufficiently particular, such that they have defined boundaries, [Mr. Villalba-Ramirez] still has not demonstrated whether these PSGs are perceived as socially distinct within the relevant Ecuadorian society.
> …
> as the respondent has not demonstrated membership in a cognizable PSG, or alleged any other protected ground, he

> is statutorily ineligible for asylum and withholding of removal, and we need not consider the respondent's remaining arguments including challenges pertaining to the lack of past persecution, nexus, and whether the government is unable or unwilling to protect him.

AR. 4.

It is well settled that "a denial of immigration relief stands or falls on the reasons given by the [agency]." *Li Zu Guan v. INS*, 453 F.3d 129, 134 (2d Cir. 2006);*Vargas v. INS*, 938 F.2d 358, 363 (2d Cir. 1991) (citations omitted) ("Board's decision stands or falls on its express findings and reasoning"); *Anderson v. McElroy*, 953 F.2d 803, 806 (2d Cir. 1992) (the court "cannot assume that the BIA considered factors that it failed to mention in its decision"). It is similarly well-settled that an explanation and reasoning is required by the lower court in order for this Court to conduct proper review. *See Beaumont, S. L. & W. Ry. Co. v. United States,* 282 U.S. 74, 86 (1930) ("Complete statements...showing the grounds upon which its determinations rest are quite as necessary as are opinions of lower courts setting forth the reasons on which they base their decisions...."); *United States v. Chicago, M., S. P. & P. R. Co.,* 294 U.S. 499, 511 (1935) ("[W]e are left to spell out, to argue, to choose

between conflicting inferences. Something more precise is requisite in the quasi-jurisdictional findings of an administrative agency....We must know what a decision means before the duty becomes ours to say whether it is right or wrong.").

In this case, in order to reverse the decision below, all that is required is the finding that the Board's social distinction conclusion was clearly erroneous and contrary to the evidence in record. Here, the record overwhelmingly demonstrates that Ecuadorian society views Petitioners' social groups as socially distinct. The Immigration Judge's truncated and unelaborated finding that "[t]he background materials in this case failed to demonstrate the social distinction aspect in finding that these particular social groups are cognizable," AR. 114, cannot be affirmed.

In *Matter of M-E-V-G-*, 26 I&N Dec. 227 (BIA 2014), the BIA held that in order for an applicant to have "membership in a particular social group," the group must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Matter of M-E-V-G-,* at 227. This Court in *Ordonez Azmen v. Barr*, 965 F.3d 128 (2d Cir 2020)

reaffirmed that BIA precedent "require[s] the agency to determine on a case-by-case basis whether a group is a particular social group," and concluded the BIA committed legal error in rejecting the petitioner's proposed social group for "superficial" reasons rather than conduct a fact-based inquiry on the record. 965 F. 3d at 134-35 (citing *Matter of W-G-R-,* 26 I. & N. Dec. 208, 214 (BIA 2014).

*Ordonez Azmen* reaffirmed that the social group analysis "consists of a 'fact-specific inquiry,' which 'focuses primarily on how the society in which the group exists views the group.'" *Id.* at 134 (quoting *Matter of M-E-V-G-,* 26 I. & N. Dec. at 240-41). Particularity and social distinction, which "overlap" considerably, "require inquiry into whether the group can be described in sufficiently distinct terms that it would be recognized, in the society in question, as a discrete class of persons" such that "members of society generally agree on who is included in the group." *Id.* at 135 (quoting *Matter of W-G-R-*, 26 I. & N. Dec. at 214) (quotation marks omitted)).

Further, since social group requirements are linked to "views of the society in question " and the "inquiry is thus closely tied to the society

out of which the claim arises," this Court held that a "particular social group analysis does not occur in isolation, but rather in the context of the society out of which the claim for asylum arises," *Ordonez Azmen*, 965 F.3d at 133 (citing *Matter of W-G-R-,* 26 I. & N. Dec. at 214 (quotation marks omitted). As such, in considering the "overall definition" of particular social group, both the "'social distinction' and `particularity' requirements" are "applied in the fact-specific context of an applicant's claim for relief." *Id* (quoting *Matter of M-E-V-G-,* 26 I. & N. Dec. at 240-41).

The *Ordonez Azmen* Court found the BIA erred in finding the proposed group "'too loosely defined,'" rejecting the BIA's reasoning that "Guatemalans may not agree on how long one will be considered a former gang member or even who is considered to be a former gang member.'" *Id.* Rather, the Court explained, the "particularity inquiry focuses on whether *there is evidence* that members of the relevant society actually 'generally agree on who is included in the group,' not whether they 'may' (or may not) agree." *Id* (emphasis added) (citing *Matter of W-G-R-,* 26 I. & N. Dec. at 221). Consequently, the Court held, "[u]nder its

own precedents, therefore, the BIA had to consider whether the record evidence demonstrated that Guatemalans actually share a common definition of who counts as a former gang member who defected." *Id.* Because it was "not clear from its decision that the BIA did so," the Court could not affirm the rejection of the proposed group of former gang members as "too loosely" defined. *Id.*

In this instance, 1) Ecuadorian current or former small business owners; and 2) Current or former Ecuadorian small business owners indebted or previously indebted to farmers are also socially distinct within Ecuadorian society, which generally distinguishes those who work at small establishments, especially those with known indebtedness, who are both seen in public and associated with running/and or managing a certain establishment, where they can be seen every day and be connect with that business, becoming both visible to the public and vulnerable to the persecutor, who would target a small business owner who stands out. Thus, "the perception of [Ecuadorian] society" is that those members in Mr. Villalba' proposed groups are "set apart within the society in some significant way," given their shared past experiences, who is only

noticeable in the community and to the persecutor but stand out with those who run small business in Ecuador, have ties to the U.S. and have resisted prior gang extortion efforts. *Matter of M-E-V-G-*, 26 I.&N. Dec. at 244. They are known by the community as small business owners because they are associated with these small establishments.

Contrary to the assertion of the IJ, the background materials bear this out. The U.S. Department of State refers to "businessmen" and "businesswomen" in Ecuador, thus confirming that they are a discrete group in Ecuadorian society. AR 228 ("the National Court of Justice sentenced former president Correa, former vice president Jorge Glas, and 16 other public officials and businessmen to eight years in prison for bribery…."); AR. 231-32 ("Some businesswomen alleged financial institutions would sometimes require a female client to obtain a husband's cosignature for loan considerations.). Similarly, it references smaller businesses and reports on their status. AR. 243 ("as NGO surveys and studies found an increase in children supporting family-run businesses who otherwise would attend school."); AR. 243 ("[C]hildren in rural areas were most likely found working in family-owned farms or

businesses….”). Further, “businesses…report the existence of extortion rackets.” AR 250.

Other reports refer to self-employed individuals in Ecuador as a discrete group, and discuss their ability to operate in the business environment. AR. 269 (The Committee notes the high percentage of women who are self-employed or employed in the informal sector. without labor and social protection, and that women have only limited access to loans, other forms of financial credit, land, equipment and machinery related to their businesses.”). Likewise, the reports distinguish between local businesses and multinational corporations. AR. 271 (“The Committee notes with concern that numerous foreign and national mining, oil, logging and agribusiness multinationals are threatening the territorial, cultural and socioeconomic integrity….”). Importantly, the World Bank provides statistics relating expressly to the limited group of individuals who manage their own businesses. AR. 365 (“In

2014 4 percent of employed men were managing a business, compared to only 1.7 percent of women."); *see also* AR. 366 ("Only 23 percent of businesses headed by women had access to a credit in 2014.")

By definition, the reports could not cite to these distinctive groups for analysis unless Ecuadorian society viewed them as distinct. They are separated out from society at large by the background materials precisely because Ecuadorian society at large separates the groups. Accordingly, the immutable characteristics which bind Petitioners' respective groups "have enough 'social visibility'…to distinguish them in the eyes of a persecutor—or in the eyes of the outside world in general.'" *Gashi v. Holder,* 702 F.3d 130, 136 (2d Cir. 2012) ("[t]hese facts sufficiently demonstrate that the group of cooperating witnesses on which basis Gashi claimed eligibility was socially visible to potential persecutors and the wider Kosovar society") (citing *Ucelo-Gomez v. Mukasey,* 509 F.3d 70, 73 (2d Cir. 2007)).

Here, contrary to the Board's claim, the Immigration Judge failed to conduct the required social distinction inquiry "in the fact-specific context of [the] applicant's claim for relief" or "in the context of the

society out of which the claim for asylum arises." *Id.* at 134. The Judge provided no citation to the background materials and failed to reconcile her bald conclusion with the specific facts delineated in the reports, as noted above.

For all of these reasons, the country conditions evidence demonstrates that Petitioners' social groups are "cognizable," in that they are "easily recognizable and understood by others" as a group of people who are particularly marginalized. *Matter of A-B-,* 27 I&N Dec. 316, 318 (A.G. 2018) (*overruled on other grounds Matter of A-B-*, 28 I&N Dec. 307 (A.G. 2021). They are also "recognizable by society at large" based on the "'highly recognizable, immutable characteristic" of shared past experience. *Id.* at 336 (quoting *Matter of H-*, 21 I&N Dec. 337, 342–43 (BIA 1996)). Members of these groups "will generally understand their own affiliation with that group, as will other people in their country." *Id* (quoting *M-E-V-G-*, 26 I&N Dec. at 238).

The IJ and BIA therefore erred as a matter of law finding the groups not cognizable under the controlling law. Even many groups arising from claims of private violence could fail when reviewed under agency

precedent, it still requires the bare minimum of a "fact-specific" inquiry based on "record evidence" as to whether the specific groups are cognizable. *Ordonez Azmen*, 965 F. 3d at 135. The controlling law of this Court therefore leaves no other remedy but to remand for either granting asylum and withholding of removal or for the social group analysis to be conducted in light of the record as a whole in the first instance.

## CONCLUSION

For the foregoing reasons, the Petition for Review should be granted, and the matter remanded for a full and fair review of the record and the granting of asylum and withholding of removal.

Dated: New York, New York
March 9, 2024

Respectfully submitted,

Joshua Bardavid, Esq.
Attorney for Petitioners

277 Broadway, Suite 1501
New York, New York 10007
Tel: (212) 219-3244
Fax: (212) 901-0949
Josh@bardavidlaw.com

## STATEMENT OF RELATED CASES AND PROCEEDINGS

Upon information and belief, there are no other cases pending before this Court that present the substantively same issues as this matter.

Dated: New York, New York
March 9, 2024

Respectfully submitted,

Joshua Bardavid, Esq.

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32 (a)(7)(C), the attached brief is proportionately spaced, has a typeface of 14 points Equity type and contains 5,012 words.

Dated: New York, New York
March 9, 2024

Respectfully submitted,

Joshua Bardavid, Esq.

## CERTIFICATE OF SERVICE

I certify that on March 9, 2024, I caused a true and correct copy of this brief, in .PDF format, to be served on Respondent via this Court's ECF/Electronic Case Filing System.

Dated: New York, New York
March 9, 2024

Respectfully submitted,

Joshua Bardavid, Esq.

## CERTIFICATE OF VIRUS CHECK

I hereby certify that a virus check of the electronic .PDF version of the foregoing Brief was performed using McAfee AntiVirus, using the most updated known version of the software and most update known database of viruses and the .PDF file was found to be virus free.

Dated: New York, New York
March 9, 2024

Respectfully submitted,

Joshua Bardavid, Esq.

## CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEF

I hereby certify that the electronic and hard copies of foregoing Brief in the instant matter contain identical text.

Dated: New York, New York
March 9, 2024

Respectfully submitted,

Joshua Bardavid, Esq.
Attorney for Petitioners

# 23-7203

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

Jerson Alejandro Villalba-Ramirez,

Maria Belen Alvarez-Merizalde,

Zoeh Alejandra Villalba-Alvarez,

Petitioners,

v.

Merrick B. Garland, United States Attorney General,

Respondent.

## SPECIAL APPENDIX

# INDEX OF THE APPENDIX

VILLALBA-RAMIREZ ET AL v. GARLAND

23-7203


Page

Decision of the Board of Immigration Appeals,
August 28, 2023 .......... 1

Decision of the Immigration Judge,
May 4, 2022 .......... 6

8 USC § 1101 .......... 23

8 USC § 1158 .......... 24

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**Bardavid, Joshua Elliot**
**Bardavid Law**
**277 Broadway, Suite 1501**
**New York NY 10007**

**DHS/ICE Office of Chief Counsel - NYV**
**201 Varick Street, Rm. 1130**
**New York NY 10014**

**Name: VILLALBA-RAMIREZ, JERSON A** **A 220-996-560**

**Riders: 220-996-561 220-996-562**

**Date of this Notice: 8/28/2023**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

Donna Carr

Donna Carr
Chief Clerk

Enclosure

Userteam: Docket

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**VILLALBA-RAMIREZ, JERSON ALEJA**
**3 RIVERDALE DRIVE**
**HAMPTON BAYS NY 11946**

**DHS/ICE Office of Chief Counsel - NYV**
**201 Varick Street, Rm. 1130**
**New York NY 10014**

**Name: VILLALBA-RAMIREZ, JERSON A** **A 220-996-560**

**Riders: 220-996-561 220-996-562**

**Date of this Notice: 8/28/2023**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. § 1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

Donna Carr

Donna Carr
Chief Clerk

Enclosure

Userteam: Docket

**NOT FOR PUBLICATION**

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

MATTER OF:

Jerson Alejandro VILLALBA-RAMIREZ, A220-996-560
Maria Belen ALVAREZ-MERIZALDE, A220-996-561
Zoeh Alejandra VILLALBA-ALVAREZ, A220-996-562

Respondents

**FILED**
Aug 28, 2023

ON BEHALF OF RESPONDENTS: Joshua E. Bardavid, Esquire

IN REMOVAL PROCEEDINGS
On Appeal from a Decision of the Immigration Court, New York, NY

Before: Wilson, Appellate Immigration Judge

WILSON, Appellate Immigration Judge

The respondents,[1] natives and citizens of Ecuador, appeal from the Immigration Judge's May 4, 2022, decision denying their applications for asylum and withholding of removal under sections 208(b)(1) and 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1), 1231(b)(3), as well as their requests for protection under the regulations implementing the Convention Against Torture ("CAT").[2] The appeal will be dismissed.

We review the findings of fact, including the determination of credibility, made by the Immigration Judge under the "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). We review all other issues, including issues of law, discretion, or judgment, under the de novo standard. 8 C.F.R. § 1003.1(d)(3)(ii).

The respondent sought asylum and related relief based on threats he received from Ecuadorian dragon-fruit farmers after, through no fault of his own, he was unable to repay a substantial debt owed to them (IJ at 3-7; Exh. 2). He claimed membership in two particular social groups ("PSGs")

[1] The respondents are the lead male respondent (A220-996-560), his wife (A220-996-561), and their minor daughter (A220-996-562). Derivative beneficiaries are not entitled to derivative claims for statutory withholding of removal or protection under the CAT. *See Matter of A-K-*, 24 I&N Dec. 275, 279 (BIA 2007). Any references to the singular respondent are to the lead male respondent.

[2] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994).

defined as: (1) Ecuadorian current or former small business owners, and (2) current or former Ecuadorian small business owners indebted or previously indebted to farmers (IJ at 5; Tr. at 12).[3] The Immigration Judge found the respondent credible, but denied relief on the bases that the respondent did not suffer past persecution, allege a cognizable PSG, suffer persecution on account of one of the proposed PSGs, or show that the government is unable or unwilling to protect him (IJ at 3-7). The Immigration Judge also found the respondent ineligible for CAT protection (IJ at 7-8). The respondent challenges these holdings on appeal.

As an initial matter, we agree with the Immigration Judge that the respondent's proposed PSGs are not cognizable (IJ at 5; Tr. at 12). *See generally Matter of M-E-V-G-*, 26 I&N Dec. 227, 237 (BIA 2014); *Matter of W-G-R-*, 26 I&N Dec. 208, 210-12 (BIA 2014). Even if membership in these groups is immutable, due to a past shared experience, and assuming without deciding that they are sufficiently particular, such that they have definable boundaries, the respondent still has not demonstrated whether these PSGs are perceived as socially distinct within the relevant Ecuadorian society. *See Koudriachova v. Gonzales*, 490 F.3d 255, 261 (2d Cir. 2007) (holding that "not all applicants who can point to membership in some group united by a shared past experience will qualify for asylum."); *Matter of Acosta*, 19 I&N Dec. 211, 233-34 (BIA 1985). The respondent bears the burden of proof to adduce necessary evidence substantiating the claim that these PSGs are each respectively recognizable as a discrete group by others in Ecuadorian society, such that they maintain the requisite social distinction, separate and apart from the persecutor's perception alone. *See Quintanilla-Mejia v. Garland*, 3 F.4th 569, 590 (2d Cir. 2021); *Paloka v. Holder*, 762 F.3d 191, 196 (2d Cir. 2014). As the Immigration Judge correctly noted, the background materials submitted in this matter fail to establish this aspect of social distinction, and we are not persuaded by the respondent's arguments on appeal to the contrary (IJ at 5; Exh. 3; Respondent's Br. at 6-7). This is especially true of the latter PSG, for which the respondent has raised no specific arguments, or pointed to any evidence describing how the relevant society perceives small business owners indebted or previously indebted to farmers. *Ordonez Azmen v. Barr*, 965 F.3d 128, 134 (2d Cir. 2020) (noting how the social distinction analysis consists of a "fact-specific inquiry" which focuses on how the society in which the group exists views the group).

Hence, as the respondent has not demonstrated membership in a cognizable PSG, or alleged any other protected ground, he is statutorily ineligible for asylum and withholding of removal, and we need not consider the respondent's remaining arguments including challenges pertaining to the lack of past persecution, nexus, and whether the government is unable or unwilling to protect him (Respondent's Br. at 8-15). *See Matter of J-G-*, 26 I&N Dec. 161, 170 (BIA 2013) (stating that an agency is not required to make findings on issues which are unnecessary to the result reached) (internal citation omitted); *see also* 8 C.F.R. §§ 1208.13(a), 1208.16(b). Nor do we need to reach the respondent's assertion that the Immigration Judge erred in not conducting a pattern or practice analysis because, as noted above, the respondent has not alleged a protected ground. *See generally* 8 C.F.R. § 1208.13(b)(2)(iii); *Shao v. Mukasey*, 546 F.3d 138, 150 n.6 (2d Cir. 2008).

---

[3] The respondent also claimed political opinion as an alternative protected ground but has not challenged the denial of his political opinion claim on appeal, and we find the issue waived (IJ at 4-5; Exh. 2 at 5). *Matter of R-A-M-*, 25 I&N Dec. 657, 658 n.2 (BIA 2012).

Finally, the respondent's arguments on appeal do not persuade us that the Immigration Judge erred in denying his application for protection under the CAT (IJ at 7-8; Exh's 3-4; Respondent's Br. at 15-17). We discern no clear error with the Immigration Judge's finding that the respondent has not shown that he is more likely than not to be tortured by or with the acquiescence of a government official in El Salvador (IJ at 7-8; Exh's. 3-4). *See Zelaya-Moreno v. Wilkinson*, 989 F.3d 190, 204-205 (2d Cir. 2021); *Matter of Z-Z-O-*, 26 I&N Dec. 586, 590 (BIA 2015) (stating that "an Immigration Judge's predictive findings of what may or may not occur in the future are findings of fact, which are subject to a clearly erroneous standard of review."). We note that the respondent argues that the Immigration Judge erred in not conducting a thorough CAT analysis—but equally true, the respondent makes no pointed arguments why the Immigration Judge's analysis itself is inaccurate, nor points to specific evidentiary evidence for why he would be subjected to torture, but rather makes a generic reference that the "documentation confirms that torture and extrajudicial killings exist on a widespread basis" (Respondent's Br. at 16). This argument, without more, is insufficient, and the respondent may be deemed to have waived the issue by not meaningfully challenging it. *See e.g., Matter of Bador*, 28 I&N Dec. 638, 638 n.2 (BIA 2022). Also, while the Immigration Judge found that the Ecuadorian government would not acquiesce to any torture—given that the respondent does not meet the high likelihood threshold required by the CAT, we do not need to address whether the government or police would acquiesce to his torture. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (recognizing that "courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.") (citations omitted); *Garcia-Aranda v. Garland*, 53 F.4th 752, 759-760 (2d Cir. 2022) (discussing the two-step inquiry for a CAT claim).

Accordingly, the following order will be entered.

ORDER: The appeal is dismissed.

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
VARICK STREET
NEW YORK, NEW YORK

Files: A220-996-561
A220-996-562
A220-996-560

May 4, 2022

In the Matters of

MARIA BELEN ALVAREZ-MERIZALDE )
JERSON ALEJANDRO VILLALBA )
ZOEH ALEJANDRA VILLALBA-ALVAREZ )

RESPONDENTS )

IN REMOVAL PROCEEDINGS

CHARGES:

APPLICATIONS:

ON BEHALF OF RESPONDENTS: JOSHUA BARDAVID

ON BEHALF OF DHS: SARAH JOLLY

## ORAL DECISION OF THE IMMIGRATION JUDGE

The respondents' are a family of three, natives and citizens of Ecuador. They entered the United States at or near Rio Grande Valley on or about June 15, 2021, and were apprehended by U.S. Immigration officials. See Exhibits 1; 1-A, and 1-B. The Department of Homeland Security served the respondents in person with a Notice to Appear. See id. The filing of the Notices of Appear in Immigration Court vested the

Court with jurisdiction. See 8 C.F.R. Section 1003.14(a).

At a Master Calendar hearing the respondents, through counsel, admitted each of the factual allegations contained in the Notices to Appear, and conceded to the sole charge of removability; therefore, removability as charged has been established by respondents' admission. See 8 C.F.R. Section 1240.10(c). After the respondents declined to designate a country of removal, the Court designated Ecuador. As relief from removal the respondents filed an I-589 application for asylum, withholding of removal, and protection under Article 3 of the Convention against Torture. See Exhibit 2. References to respondent in this oral decision are to the lead adult male respondent. The respondent offered documentary evidence from himself in support of his applications for relief. The documentary evidence submitted by the respondents was listed as Exhibits 3 and 4. The Court has considered the entire record in making its decision regarding the respondents' application for relief, whether or not specifically mentioned in this decision.

In support of his asylum application, the respondent submitted a written statement. See Exhibit 4-A. Both parties agreed that if the respondent were to testify it would be in conformity with his statement, such that he was not called to testify today. See Matter of Fefe. As such, the Court will incorporate the respondent's statement into this fact section.

## FINDINGS AND CONCLUSIONS OF THE COURT

An addendum stating the standards of law and burdens of proof relevant to these issues will be served on the parties, and a copy placed in the record of proceedings. That addendum is hereby incorporated into this decision by reference.

Respondent's asylum application was timely filed. He entered on June 15, 2021, and an application for asylum was filed on September 29, 2021. See INA Section

208(a)(2)(B). Moreover, the Court finds that the respondent is eligible to apply for asylum. DHS argues that there are serious reasons for believing that the respondent has committed a serious non-political crime outside of the United States prior to the arrival of the alien in the United States that would bar him from asylum. DHS refers to the two shipments of dragon fruit that occurred on December 29, 2020, and January 3, 2021, totaling $40,000. The Court does not find that this is a serious non-political crime that occurred when the respondent was in Ecuador. The respondent did not have an intent to steal this amount from the farmers. At that time he was having issues with a gentleman named Jorge Espinoza, and by shipping these dragon fruits, he had wrongfully assumed that Mr. Espinoza would pay him for these shipments; however, he was only paid $5,000 for this shipment, and was indebted to the farmers by $35,000. Although the respondent left Ecuador without paying these farmers, the respondent left for the purpose because he was being threatened and he feared for his life. Therefore, on this record, it is insufficient for the Court to find that the respondent had committed a serious non-political crime outside of the United States such that he would be barred from asylum. Moreover, the Court will assume the respondent's credibility for its entirety. Nevertheless, the Court will deny each of respondent's applications for relief because he did meet his burden of proof as a matter of law.

There ~~It~~ is no universally accepted definition of persecution. Persecution has generally been interpreted to include threats to life or freedom, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom. Matter of Acosta, 19 I&N Dec. 201, 222 (BIA 1985). It is the infliction of suffering or harm upon those who differ on the basis of a protected statutory ground, and includes non-life threatening violence and physical abuse. Ivanishvili v. U.S. Dept. of Justice, 433 F.3d 332, 341 (2nd Cir. 2006). Internal quotations marks and citations omitted. When

evaluating whether persecution has occurred, the Court must consider events cumulatively. See Poradisova v. Gonzales, 420 F.3d 70, 79-80 (2nd Cir. 2005).

Persecution within the meaning of the INA, however, does not encompass all treatment that society regards as unfair, unjust, unlawful, or unconstitutional. Matter of V-T-S-, 21 I&N Dec. 792, 798 (BIA 1997). The Court is sympathetic to the respondent as he and his family were being threatened by the farmers on these phone calls and in-person threats. They would state that they would beat the respondent and hurt his family if they were not repaid the debts owed. Nevertheless, the respondent nor his family have not been physically harmed. They have not had to seek any medical treatment in Ecuador or in the United States, nor have they had to seek any mental health professional in Ecuador or in the United States. The Court does not find that the threats were imminent, concrete, or so menacing as to cause significant actual suffering or harm. See Ci Pan v. Att'y Gen., 449 F.3d 408, 412. Again, the Court does not minimize the fear of individuals approaching the respondent or his wife at their house or outside of their home many times, specifically between January and March of 2021 it occurred 20 times. And on March 15, 2021, a farmer name John Isabella came to the respondent's home at night threatening him, and then ien March 2021 a man named Edison Ferado would follow the respondent and yell at him and threaten him, and he would do this two to three times each week. And this individual would be outside of the respondent's home watching him, even after he returned from home. Nevertheless, the Court does not find these threats were imminent as the respondent and his family have not been physically harmed, fortunately. Therefore, on this record, taking cumulatively, the Court does not find that the respondent suffered past persecution as a matter of law.

The respondent has also failed to show the requisite nexus to a protected ground. The respondent states that he would be harmed on account of his political

opinion. The respondent does not claim that he was politically active or that the individuals he feared perceived him to be so. Moreover, he has not shown that the individuals he fears were motivated by any perception of his political opinion or of an imputed political opinion. Therefore, the Court does not find that the respondent was or will be targeted based on any perception that he possesses a political opinion or an imputed political opinion.

The respondent asserts that he was targeted on account of his membership in a particular social group of (1) Ecuadorian current or former small business owners, and (2) current or former Ecuadorian small business owners indebted or previously indebted to farmers. A particular social group must be defined by a shared characteristic that is immutable, be distinct within the society in question, and be defined with sufficient particularity. See Matter of W-G-R-, 26 I&N Dec. 208, 210-12 (BIA 2014). This claim fails in part because both proposed social groups are not cognizable. First, the Court does not find that being a business owner is immutable, as the respondent could find another form of employment and no longer be a current small business owner.

Nevertheless, the Court would agree that being a former small business owner is something that cannot be changed. Moreover, the issue with both proposed social groups is that the respondent has not shown that the group of people who are being sought after by gangs is recognized, or by these farmers, are recognized as a distinct group in Ecuadorian society. The background materials in this case failed to demonstrate the social distinction aspect in finding that these particular social groups are cognizable. Therefore, the respondent has not demonstrated a cognizable social group in both PSG's delineated.

However, even if the Court were to find a cognizable social group in one or both of the PSG's delineated, the Court finds that the respondent has not shown the requisite

nexus to a protected ground. In post-REAL ID Act cases such as this, the applicant must demonstrate that a protected ground was or will be at least one central reason for persecuting the applicant. INA Section 208(b)(1)(B)(i). In this case, the respondent was being targeted by the farmers because he owed a debt to the farmers, and he was unable to pay the farmers after they had provided him the shipments of dragon fruit. The respondent's problems started because of Jorge Espinoza who was the intermediary who stopped paying the respondent the money that he was owed from the shipments that he received from the farmers. This is a personal dispute between the respondent and the farmers, and a business transaction that did not go as planned. It is unfortunate that the respondent and his family were threatened due to their debts; however, it is understandable given that the farmers also worked hard and they were not paid for the fruits that they provided the respondent to export. On this record, the respondent has failed to demonstrate that he was targeted on account of a protected ground. And because he has not shown the requisite nexus to a protected ground, he is not eligible for asylum or withholding of removal under the Act.

While the respondent may possess a legitimate fear of harm, he has not demonstrated that the government of his country is unable or unwilling to protect him. The Board of Immigration Appeals has long held that harm may qualify as persecution if it is inflicted either by a government or (2) by non-governmental actors that the relevant government is unable or unwilling to control. See Matter of Acosta, 19 I&N Dec. 201, 222 (BIA 1985). The Court notes that the respondent has not had any problems with the police or military in his country, and he has failed to demonstrate that the police in Ecuador are unable or unwilling to protect him.

The respondent fears the violent conduct of private actors such as the farmers that the respondent owes a debt to and that threatened him. The respondent has failed

to establish that the government condoned the private actions or demonstrated an inability to protect him and his family, as the respondent chose not to report the threat or any harm that he suffered from the farmers to the police in Ecuador. The respondent has failed to establish that the government of his country is unable or unwilling to protect him. Moreover, the Court notes that according to the background materials, although Ecuador has a crime wave, there are measures in place by their president in response to the wave of violent crime. And the police and the armed forces were being mobilized and their presence will be felt with force in the streets. See Exhibit 3, page 167. Therefore, on this record, the Court finds that the respondent has failed to establish that the government of his country is unable or unwilling to protect him. As such, the Court will deny the respondents applications for asylum and withholding of removal, as that carries a higher burden of proof.

The respondent has also not shown that it is more likely than not that he would be tortured in Ecuador if he returns to that country. The respondent was not prosecuted in the past, much less tortured. Respondent's fear of harm in Ecuador is understandable given the high rates of crime in that country. See Exhibit 3. Yet, eligibility for CAT relief cannot be established by stringing together a series of suppositions to show that torture is more likely than not to occur unless the evidence shows that each step in the hypothetical chain of events is more likely than not to happen. See Matter of J-F-F, 23 I&N Dec. 912, 917-18 (A.G. 2006). In this case, the respondent's CAT claim is too speculative to merit relief. The respondent has also not shown that the Ecuadoran government would acquiesce in any future torture that he fears. The respondent never reported any criminal activity to authorities in the past. Moreover, he has not submitted sufficient country conditions evidence that would show that the government acquiesces to the torture ofd similarly situated individuals. The

Court has reviewed the most recent U.S. Department of State Country Reports on Human Rights Practices in Ecuador. Although that report does describe government corruption, it does not describe acquiescence to the torture of the sort that respondent fears.

Accordingly, the Court enters the following orders:

ORDERS

IT IS HEREBY ORDERED that all respondents' applications for asylum under INA Section 208 is denied.

IT IS FURTHERED ORDERED that respondent 560's application for withholding of removal to Ecuador under INA Section 241(b)(3) is denied.

IT IS FURTHERED ORDERED that respondent 560's application for relief under the Convention against Torture is denied.

IT IS FURTHERED ORDERED that all respondents be removed to Ecuador on the charge set forth in the Notice to Appear.

May 4, 2022

***Please see the next page for electronic signature***

Ling, Lisa W.
Immigration Judge

Digitally signed by

Ling, Lisa W. Immigration Judge

August 29, 2022 3:29 PM

Names: Alvarez-Merizalde, Maria Belen / Villalba, Jerson Alejandro / Villalba-Alvarez, Zoeh Alejandra
A#: 220-996-561/560/562
Date of Decision: May 4, 2022

**Standard Language Addendum: Asylum**

The following statements of law are hereby incorporated into the Immigration Judge's oral decision. These statements are not the sole legal basis for the decision and are meant to be read in conjunction with any law cited in the oral decision itself.

## I. Credibility & Corroboration

An applicant requesting asylum bears the evidentiary burden of proof and persuasion in connection with any application under INA § 208. Under the REAL ID Act, after considering "the totality of the evidence, and all relevant factors," the Court may base a credibility determination on: the demeanor, candor, or responsiveness of the applicant or witness; the inherent plausibility of the account; the consistency between oral and written statements; the internal consistency of such statements; the consistency of such statements with other evidence of record; and any inaccuracy or falsehood in such statements, "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." INA § 208(b)(1)(B)(iii); see also Diallo v. U.S. Dep't of Justice, 548 F.3d 232, 234 n.1 (2d Cir. 2008); Xiu Xia Lin v. Mukasey, 534 F.3d 162, 164 (2d Cir. 2008) (noting that judges "may rely on omissions and inconsistencies that do not directly relate to the applicant's claim of persecution"). But see Gao v. Sessions, 891 F.3d 67, 78 (2d Cir. 2018) ("[I]n general 'omissions are less probative of credibility than inconsistencies created by direct contradictions in evidence and testimony."); see also Gurung v. Barr, 929 F.3d 56, 61 (2d Cir. 2019) (stating that trivial differences in the wording of statements describing the same event are not sufficient to create inconsistencies, especially where an applicant is relying on an interpreter to convey their story).

Testimony that is credible, persuasive, and "refers to specific facts sufficient to demonstrate that the applicant is a refugee" may be sufficient to meet this burden of proof absent corroboration. INA § 208(b)(1)(B)(ii); see also 8 C.F.R. § 1208.13(a). In determining whether the applicant has met their burden of proof, the Court "may weigh the credible testimony along with other evidence of record." INA § 208(b)(1)(B)(ii); see Garland v. Ming Dai, 141 S. Ct. 1669, 1680 (2021) (holding that even if the applicant's evidence is treated as credible, "the agency need not find his evidence persuasive or sufficient to meet the burden of proof"). Where the Court determines that the applicant should "provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." INA § 208(b)(1)(B)(ii). An Immigration Judge should provide an applicant who has not submitted reasonably available corroborating evidence both an opportunity to explain the absence of such evidence and a continuance if they show good cause. Matter of L-A-C-, 26 I&N Dec. 516, 527 (BIA 2015). However, the Immigration Judge is not required to give the applicant advance notice of the specific evidence the applicant must submit to meet their burden of proof and to grant a continuance automatically for the applicant to obtain that evidence. Id.; see Sun v. Sessions, 883 F.3d 23, 30-31 (2d Cir. 2018) (deferring to the BIA's interpretation in Matter of L-A-C-). If the Court determines that an applicant's testimony is credible but nonetheless insufficient to meet their burden of proof, the Immigration Judge must explain, either in their decision or otherwise in the record, what additional corroborating evidence was needed; why it

was reasonable to expect additional corroboration; and why the applicant's explanations for the lack of such corroboration were insufficient. Manning v. Barr, 954 F.3d 477 (2d Cir. 2020).

## II. Asylum

To be statutorily eligible for asylum, an applicant bears the burden of establishing that they are a refugee, which requires a showing of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. INA §§ 101(a)(42)(A), 208(b)(1)(A); 8 C.F.R. §§ 1208.13, 1240.8(d). If eligibility is established, asylum may be granted in the exercise of discretion. INA § 208(b)(1)(A); INS v. Cardoza-Fonseca, 480 U.S. 421, 423 (1987).

### A. One Year Filing Deadline

As a threshold matter, an applicant must prove by clear and convincing evidence that their asylum application was filed within one year of the date of their last arrival into the United States. INA § 208(a)(2)(B); 8 C.F.R. § 1208.4(a)(2). If the applicant files after the one-year deadline, they must show to the satisfaction of the Court that they qualify for an exception to the filing deadline. Id.

### B. Past Persecution

To establish past persecution, an asylum applicant must demonstrate that they suffered persecution in their country of nationality on account of a protected ground, and that they are unable or unwilling to return to, or avail themself of the protection of, that country because of such persecution. INA §§ 101(a)(42)(A), 208(b)(1)(B); 8 C.F.R. § 1208.13(b)(1). "Persecution is the infliction of suffering or harm upon those who differ on the basis of a protected statutory ground," and includes "non-life-threatening violence and physical abuse." Ivanishvili v. U.S. Dep't of Justice, 433 F.3d 332, 341 (2d Cir. 2006) (internal quotation marks and citations omitted). Moreover, persecution must be inflicted by either the government or by a person or entity the government is "unwilling or unable to control." Matter of Acosta, 19 I&N Dec. 211, 222 (BIA 1985). When evaluating whether persecution has occurred, events must be considered cumulatively. Poradisova v. Gonzales, 420 F.3d 70, 79-80 (2d Cir. 2005).

### C. Well-Founded Fear of Future Persecution

If past persecution is established, a regulatory presumption arises that the applicant has a well-founded fear of future persecution on the basis of their original claim. 8 C.F.R. § 1208.13(b)(1). The U.S. Department of Homeland Security may rebut this presumption if it establishes by a preponderance of the evidence that the applicant's fear is no longer well-founded due to a fundamental change in circumstances or because the applicant could avoid future persecution by relocating to another part of the country and that it would be reasonable to expect them to do so. 8 C.F.R. § 1208.13(b)(1)(i)-(ii).

To establish a well-founded fear of future persecution, the applicant must establish both that they have a subjective fear of persecution and that the fear is objectively reasonable. Ramsameachire v. Ashcroft, 357 F.3d 169, 178 (2d Cir. 2004). The applicant's credible testimony may satisfy the subjective component. Id. at 178; see also Diallo v. INS, 232 F.3d 279, 286 (2d Cir. 2000). To meet the objective element of the test, the applicant need only show that such fear is grounded in reality; that is, they must present "reliable, specific, objective" evidence that their fear is reasonable. Ramsameachire, 357 F.3d at 178. The applicant's fear may be well-founded even if there is "only a slight, though discernible, chance of persecution." Diallo, 232 F.3d at 284 (citing Cardoza-Fonseca, 480 U.S. at 431). To demonstrate that their fear of persecution is objectively well-founded, an applicant must provide evidence:

> (1) that [they] ha[ve] a belief or characteristic that a persecutor seeks to overcome by means of some mistreatment, that the persecutor has the (2) capability and (3) inclination to impose such mistreatment, and (4) that the persecutor is, or could become, aware of the applicant's possession of the disfavored belief or characteristic.

Kyaw Zwar Tun v. INS, 445 F.3d 554, 565 (2d Cir. 2006).

An applicant is not required to provide evidence that they would be "singled out individually" for persecution in the country of removal if they establish that, in the country from which they are seeking asylum, "there is a pattern or practice . . . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion," and that the applicant is included in and identifies with that group, such that their "fear of persecution upon return is reasonable." 8 C.F.R. § 1208.13(b)(2)(iii); see also Shao v. Mukasey, 546 F.3d 138, 150 n.6 (2d Cir. 2008) ("Pattern-and-practice analysis affords a petitioner who cannot credibly demonstrate a reasonable possibility that he will be targeted as an individual for future persecution an alternative means to demonstrate that his fear of persecution is objectively reasonable."). To establish eligibility for asylum based upon a pattern or practice of persecution, an applicant must demonstrate that the persecution against the group in which they are included is "systemic or pervasive." Matter of A-M-, 23 I&N Dec. 737, 741 (BIA 2005).

D. Nexus to a Protected Ground

An applicant for asylum must also demonstrate that the persecution they fear was or would be "on account of" their race, religion, nationality, membership in a particular social group, or political opinion. INA §§ 101(a)(42)(A), 208(b)(1)(A); 8 C.F.R. §§ 1208.13, 1240.8(d). In post-REAL ID Act cases, the applicant must demonstrate that a protected ground was or will be "at least one central reason for persecuting the applicant." INA § 208(b)(1)(B)(i); see, e.g., Acharya v. Holder, 761 F.3d 289, 297 (2d Cir. 2014); Matter of A-C-A-A-, 28 I&N Dec. 84, 92 (A.G. 2020) ("[P]ersecution that results from personal animus or retribution generally does not establish the necessary nexus."). In discerning persecutory motives, the Court must consider the "totality of the circumstances." Matter of S-P-, 21 I&N Dec. 486, 494 (BIA 1996); see Vumi v. Gonzales, 502 F.3d 150, 157-58 (2d Cir. 2007).

*i. Religion*

"The critical showing that an applicant must make to demonstrate eligibility for asylum on religious persecution grounds is that he [or she] has suffered past persecution, or fears future persecution, on the basis of religion." Rizal v. Gonzales, 442 F.3d 84, 90 (2d Cir. 2006). The applicant must establish that they identify with a particular religion or that others perceive the applicant as an adherent to that religion, but the applicant need not demonstrate detailed knowledge of the religion's doctrinal tenets. Id. Evidence of treatment of religious groups is probative of a threat against an applicant claiming religious persecution. See, e.g., Ivanishvili, 433 F.3d at 339-43 (IJ failed to evaluate Jehovah's Witness testimony about religious persecution in Georgia). Evidence of an applicant's religious conversion where the applicant converted after leaving his or her home country is also probative. See Rafiq v. Gonzales, 468 F.3d 165, 166 (2d Cir. 2006) (reversing denial of CAT claim of Muslim who converted to Christianity).

*ii. Particular Social Group*

A "particular social group" must be (1) composed of members who share a common immutable characteristic; (2) defined with particularity; and (3) socially distinct within the society in question. Matter of M-E-V-G-, 26 I&N Dec. 227, 237 (BIA 2014). The characteristic may be innate or based upon a shared past experience. Matter of Acosta, 19 I&N Dec. at 233; see Matter of C-A-, 23 I&N Dec. 951, 958 (BIA 2006).

The "common, immutable characteristic" is determined on a case-by-case basis and "must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." Matter of Acosta, 19 I&N Dec. at 233. Next, the particularity requirement is "definitional in nature" and focuses on delineation—whether the particular social group definition is sufficiently discrete and precise as opposed to amorphous. Matter of M-E-V-G-, 26 I&N Dec. at 239-41; Matter of W-G-R-, 26 I&N Dec. 208, 214 (BIA 2014). The proposed particular social group should address the "outer limits" of the group's boundaries and "provide a clear benchmark for determining who falls within the group." Matter of M-E-V-G-, 26 I&N Dec. at 239-41. In making this determination, the definition should be analyzed in the context of the society in question and focus on whether members of the society "generally agree on who is included in the group." Matter of W-G-R-, 26 I&N Dec. at 221. Lastly, "social distinction" requires that members of the proposed group would be perceived as a separate or distinct group by society. Matter of M-E-V-G-, 26 I&N Dec. at 242 (clarifying that the perception of the society, and not the persecutor, is determinative for social distinction purposes). In other words, the society in question must meaningfully distinguish those with the common immutable characteristic from those who do not have it. Id. at 238.

*iii. Political Opinion*

To establish persecution on account of a political opinion, the applicant must demonstrate that the persecution is "on account of the victim's political opinion, not the persecutor's." See INS v. Elias-Zacarias, 502 U.S. 478, 482 (1992); see also Castro v. Holder, 597 F.3d 93, 100 (2d Cir. 2010). The persecutor's motive must arise from the applicant's political belief or from a political belief imputed to him by the persecutor. Elias-Zacarias, 502 U.S. at 483; Zelaya-Moreno v. Wilkinson, 989 F.3d 190, 196 (2d Cir. 2021). To prevail on an asylum claim based on political opinion, the asylum applicant must specify the political opinion on which they rely. Zelaya-Moreno, 989 F.3d at 197-201 (finding the applicant's anti-gang views did not constitute a political opinion where his sole "political" statement was "gangs are bad" and there was no evidence in the record that the gangs advocated for a political agenda or employed tactics in service of a political philosophy). Evaluating what constitutes a political opinion for asylum purposes involves a highly "contextual factual inquiry" based on the political context in which the dispute occurs. See Hernandez-Chacon v. Barr, 948 F.3d 94 (2d Cir. 2020) (finding that the IJ and BIA erred in not considering whether an applicant's refusal to acquiesce to a gang member's sexual advances was or could be seen as an expression of a political opinion "given the political context of gang violence and the treatment of women in El Salvador"). An imputed political opinion can constitute a ground of persecution, whether correctly or incorrectly attributed. See id.; Vumi v. Gonzales, 502 F.3d 150, 156 (2d Cir. 2007).

E. Government Unwilling or Unable

Persecution must be inflicted by either the government or by a person or entity the government is "unwilling or unable to control." See Matter of Acosta, 19 I&N Dec. at 222; see also Pavlova v. INS, 441 F.3d 82, 91 (2d Cir. 2006) ("[W]e have never held that direct governmental action is required to make out a claim of persecution. On the contrary, 'it is well established that private acts may be persecution if the government has proved unwilling to control such actions.'") (internal citations omitted). The unwilling-or-unable standard contains two distinct prongs: the "unwilling" prong and the "unable" prong, only one of which must be satisfied. See Scarlett v. Barr, 957 F.3d 316, 330 (2d Cir. 2020) (finding that even though applicant may not have demonstrated that the Jamaican police were *unwilling* to protect him from gang violence, the BIA overlooked evidence that the Jamaican authorities were *unable* to protect him).

F. Discretion

An applicant who establishes statutory eligibility for asylum still bears the burden of demonstrating that they merit a grant of asylum as a matter of discretion. INA § 208(b)(1)(A); Cardoza-Fonseca, 480 U.S. at 429 n.5 (noting that the Attorney General is not required to grant asylum to everyone who meets the refugee definition). In determining whether a favorable exercise of discretion is warranted, both favorable and adverse factors should be considered. Matter of Pula, 19 I&N Dec. 467, 473-74 (BIA 1987) (superseded by regulation on other grounds). General humanitarian factors, such as age, health, or family ties, should also be considered in the exercise of discretion. Matter of H-, 21 I&N Dec. 337, 347-48 (BIA 1996); Matter of Pula, 19 I&N Dec. at 474. In the absence of any adverse factors, asylum should be granted. Matter of Pula, 19 I&N Dec. at 474. In addition, the danger of persecution should outweigh all but the most egregious adverse factors.

Wu Zheng Huang v. INS, 436 F.3d 89, 98 (2d Cir. 2006) (citing Matter of Kasinga, 21 I&N Dec. 357, 367 (BIA 1996)); see Matter of Pula, 19 I&N Dec. at 474.

A decision to deny asylum in the exercise of discretion should not be based solely on the noncitizen's use of a smuggler to enter the United States or on a partial adverse credibility determination. Wu Zheng Huang, 436 F.3d at 99. Rather, "the totality of the circumstances and actions of an alien[1] in his flight from the country where he fears persecution should be examined in determining whether a favorable exercise of discretion is warranted." Matter of Pula, 19 I&N Dec. at 473; see Wu Zheng Huang, 436 F.3d at 99. When an Immigration Judge denies asylum solely in the exercise of discretion and grants withholding of removal, they must reconsider the denial to take into account factors relevant to family unification. See 8 C.F.R. § 1208.16(e); see also Matter of T-Z-, 24 I&N Dec. 163, 176 (BIA 2007). Factors to be considered include the reasons for the denial and reasonable alternatives available to the applicant such as reunification with their spouse or minor children in a third country. 8 C.F.R. § 1208.16(e).

## III. Withholding of Removal

To qualify for withholding of removal, an applicant must establish a "clear probability" of persecution, meaning that it is "more likely than not" that they would be subject to persecution on account of a protected ground. Cardoza Fonseca, 480 U.S. at 430 (citing INS v. Stevic, 467 U.S. 407 (1984)); see INA § 241(b)(3). A withholding applicant must establish that a protected ground "was or will be at least one central reason" for the persecution they will face. Matter of C-T-L-, 25 I&N Dec. 341, 348 (BIA 2010).

Where the applicant establishes that they suffered past persecution on the basis of one such statutory ground, it is presumed that the applicant's life or freedom will be threatened in the future, and the burden shifts to DHS to demonstrate by a preponderance of the evidence that (1) a fundamental change in circumstances has occurred in that country such that the applicant's life or freedom will not be threatened or (2) the applicant could safely relocate to another area in the proposed country of removal and that it would be reasonable to expect them to do so. 8 C.F.R. § 1208.16(b)(1); see also Makadji v. Gonzales, 470 F.3d 450, 458 (2d Cir. 2006); Serafimovich v. Ashcroft, 456 F.3d 81, 85 (2d Cir. 2006). If the applicant did not suffer past persecution, or if the fear of future threat to life or freedom is unrelated to the past persecution that they suffered, the applicant must establish "that it is more likely than not" that they "would be persecuted" in the future on account of a protected ground. 8 C.F.R. § 208.16(b)(2); Ivanishvili v. U.S. Dep't of Justice, 433 F.3d 332, 339 (2d Cir. 2006).

## IV. Convention Against Torture

The Convention Against Torture ("CAT") and its implementing regulations provide that no person shall be removed to a country where it is "more likely than not" that such person will be subject to torture. 8 C.F.R. § 1208.16(c)(2). Where an application for asylum is denied because the applicant

[1] The term "alien" is no longer used in EOIR decisions unless quoting a statute, regulation, legal opinion, court order, or settlement agreement.

failed to demonstrate the "slight, though discernible, chance of persecution" required for asylum, the applicant necessarily fails to meet the "more likely than not to be tortured" standard for CAT relief. Lecaj v. Holder, 616 F.3d 111, 119 (2d Cir. 2010). Eligibility for CAT relief cannot be established by stringing together a series of suppositions to show that torture is more likely than not to occur unless the evidence shows that each step in the hypothetical chain of events is more likely than not to happen. Matter of J-F-F-, 23 I&N Dec. 912, 917-18 (A.G. 2006).

"Torture" is "an extreme form of cruel and inhuman treatment," defined, in part, as the intentional infliction of severe pain or suffering by, or at the instigation of, or with the consent or acquiescence of a public official. 8 C.F.R. §§ 1208.18(a)(1)(2); see Pierre v. Gonzales, 502 F.3d 109, 115 (2d Cir. 2007). The definition of torture does not include pain or suffering arising only from, inherent in, or incidental to lawful sanctions, unless such sanctions defeat the object and purpose of the CAT. 8 C.F.R. § 1208.18(a)(3); see, e.g., Pierre, 502 F.3d at 121; Matter of R-A-F-, 27 I&N Dec. 778 (A.G. 2020); Matter of J-R-G-P-, 27 I&N Dec. 482 (BIA 2018); see also Gallina v. Wilkinson, 988 F.3d 137 (2d Cir. 2021) (finding no basis to overturn the BIA's finding that applicant's pain and suffering in Italian prison were "inherent in or incident to a lawful sanction and thus not intentionally inflicted"). "Torture" does not include "negligent acts" or harm stemming from a lack of resources. Matter of J-R-G-P-, 27 I&N Dec. at 484. Instead, a torturous act must "be specifically intended to inflict severe physical or mental pain or suffering." Matter of R-A-F-, 27 I&N Dec. at 778. The act must be motivated by "such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind." Id.

Torturous conduct committed by a public official who is acting "in an official capacity," that is, "under color of law," is covered by the CAT. Matter of O-F-A-S-, 28 I&N Dec. 35 (A.G. 2020); 8 C.F.R. § 1208.18(a)(1). The "under color of law" standard makes no categorical distinction between the acts of low and high level officials. Id. at 40. A public official, regardless of rank, acts "under color of law" when he exercises power "possessed by virtue of . . . law and made possible only because [he was] clothed with the authority of . . . law." Id. There is no distinct "rogue official" test for determining whether a public official or other person is acting "in an official capacity." Id. at 41. Acquiescence of a public official requires that the official have awareness of or remain "willfully blind" to the activity constituting torture prior to its commission, and thereafter breach their legal responsibility to intervene to prevent such activity. 8 C.F.R. § 1208.18(a)(7); Khouzam v. Ashcroft, 361 F.3d 161, 171 (2d Cir. 2004).

In assessing whether an applicant has satisfied their burden of proof, the Court must consider all evidence relevant to the possibility of future torture, including evidence that the applicant has suffered torture in the past; evidence that the applicant could relocate to a part of the country of removal where they are not likely to be tortured; evidence of gross, flagrant or mass violations of human rights within the country of removal; and other relevant information on country conditions. 8 C.F.R. § 1208.16(c)(3); see Ramsameachire, 357 F.3d at 184. The regulations do not require the applicant to establish relocation is not possible. Manning v. Barr, 954 F.3d 477, 488 (2d Cir. 2020) (holding the IJ erred in placing the burden on the applicant to demonstrate that it was not possible to relocate to a different area of the country to avoid torture). Rather, evidence that an applicant

can relocate to another part of the country where they are "not likely to be tortured" is only one of a number of factors the IJ must consider. Id. Internal relocation is not satisfied "by assuming that a petitioner must essentially live incommunicado and isolated from loved ones." Id. at 488.

**I.N.A. § 101, 8 U.S.C. § 1101- Definitions**

(a) As used in this Act-

***

(42) The term "refugee" means:

(A) any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, or

(B) in such circumstances as the President after appropriate consultation (as defined in section 207(e) of this Act) may specify, any person who is within the country of such person's nationality or, in the case of a person having no nationality, within the country in which such person is habitually residing, and who is persecuted or who has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion…. For purposes of determinations under this Act, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

# 8 USC § 1158

§ 1158. Asylum

(a) Authority to apply for asylum.

(1) In general. Any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters), irrespective of such alien's status, may apply for asylum in accordance with this section or, where applicable, section 235(b) [8 USCS § 1225].

***

(b) Conditions for granting asylum.

(1) In general. The Attorney General may grant asylum to an alien who has applied for asylum in accordance with the requirements and procedures established by the Attorney General under this section if the Attorney General determines that such alien is a refugee within the meaning of section 101(a)(42)(A) [8 USCS § 1101(A)(42)(A)].

****